King, J.,
delivered the opinion of the court.
These two suits were actions of debt brought by the People of the State of Colorado to recover from N. Q. Tanquary and others the sum of $1,500 and $1,000 respectively, the penalties named in two bail bonds or recognizances. In each case the defendant Tanquary, one of the sureties, filed an answer containing two defenses. As the judgment against Tanquary must be reversed for error of the court in sustaining a demurrer to the second defense, it will not be necessary to make further mention of the first defense.
The complaint in the first ease (No. 46699 of thé' district court) alleged that on October 24, 1908, Henry S. McDowell, as principal, and Albert Tomkinson and N. Q. Tanquary, as sureties, executed their bail bond or recognizance, the condition of which is as follows:
“That if the above bounden Henry B. McDowell shall personally be and appear at the fifth division of the district court of the second judicial district, sitting within and for the City and County of Denver, state of Colorado, on the 31st day of October, A. D. 1908, and from day to day and term to term thereafter, and remain at and abide the order of said court, and not depart the court without leave, then and there to answer unto a certain information herein pending against the said Henry B. McDowell for the crime of conspiracy to commit grand larceny and embezzlement, then this recognizance to be void, otherwise to be and remain in full force'and effect.”
That by virtue of said bond McDowell secured his *533 release from custody; that thereafter he failed to appear in court from day to day, and term to term, and to remain at and abide the order of said court, and not depart the said court without leave, and that on April 14,-1909, the said McDowell and his bondsmen were called in open court, and default in said bond entered for failure of said McDowell to appear. The complaint in the second case (No. 48410 of the district court) and the defense thereto was in all material particulars the same as the.complaint and defense in the first, so that the determination .of one is necessarily decisive of the other.
For his second defense Tanquary alleged in substance that in the actions and proceedings wherein the bail bonds or recognizances set forth in the complaints were given, he was the attorney of record as well as surety for said McDowell; that after the recognizances were given he appeared in court with the said McDowell from time to time, and term to term, until the 16th day of March, 1909, at which time both he and the said McDowell were present in the fifth division of the said district court; that theretofore the said action had been on several occasions set down for trial, and in each instance the order of trial had been vacated at the request of the district attorney. As to the second case, it was alleged that on said last named date, and while the principal on said bond was in court, and ready to proceed to trial, and the said Tanquary as his attorney, was also in court for the purpose of proceeding with the trial of that cause, upon motion of the district attorney, the said action and proceeding was stricken from the trial, calendar of the court. That then and there, because of the fact that he had so made and executed the said bail bonds as one of the sureties thereon, Tanquary asked the district attorney in open court whether the said' actions and proceedings would ever thereafter be called for or brought to trial, and in response to said question said district at *534 torney stated and represented to Tanquary that said actions and proceedings would never thereafter be called or brought to trial. It is further alleged that Tanquary informed McDowell of such statement so made by the district attorney; that defendant Tanquary had taken and held in his possession good and sufficient security to indemnify himself against any loss he might incur by reason of having executed the said recognizances, but that after being assured by the district attorney that the cause would not be further prosecuted, and believing that the cause had been abandoned by the state, he surrendered the said securities to McDowell, who thereafter left the state, by reason of which he was unable to surrender him into custody; that he had no knowledge or notice that further action would be taken or that said recognizances had been forfeited until the commencement of these suits; that because of the representations made by the district attorney, and his reliance thereon, resulting in the loss of his securities, and the departure of the principal recognizor so that he could not be surrendered by his surety, Tanquary prayed that the plaintiff be estopped from enforcing the forfeiture of said bail bond against him.
Prom time immemorial, two remedies have been recognized for the enforcement of a forfeited bail recognizance. The first remedy was by scire facias, directed to the sureties, requiring them to show cause why judgment should not be entered upon the debt acknowledged in the recognizance, and execution issue on the judgment; the other remedy was by an action in the nature of debt. The plea or answer in either case would be sufficient as a defense if it stated facts sufficient to show that final judgment should not be entered. — 34 Cyc., 565; People v. Watkins, 39 Ill., 117; Chase v. People, 2 Colo., 481; Hadaway v. Hynson, 89 Md., 305, 315, 43 Atl., 806; Wray v. People, 70 Ill., 664; People v. Bartlett, 3 Hill (N. Y.), 570. *535 It will be observed that this defense does not challenge the validity nor sufficiency of the recognizance, nor deny that the forfeiture was entered, but does allege an equitable, if not strictly legal, reason why the forfeiture ought not to have been asked for by the district attorney, nor granted by the court, if the facts were within its knowledge, and why the forfeiture should be set aside and final -judgment should not be rendered as against said surety. All the material allegations of that defense are, for the purposes of .the demurrer, to be taken as true, and so taken they show beyond controversy that the district attorney acted in bad faith in stating to the' attorney and surety that the suits would not be thereafter prosecuted, or in bad faith, or by inadvertence, in taking an order of default and forfeiture of the recognizance. His statement Was equivalent to' an express representation that the prosecution had been abandoned. It was, and was understood to be, leave granted by the district attorney, of whose authority we shall speak, to the defendant in that suit, to depart from the court. In this state at that time the district attorney had full power, without the consent of the court, and even against its will, to enter a nolle pros, as to any criminal charge, and abandon the prosecution. — People v. Owers, 23 Colo., 466, 48 Pae., 500. Such being the law at that time, we think the positive and unqualified statement of the district attorney made to the principal or surety in a bail bond that further prosecution would not be had, ought to be regarded as the act of the obligee, would constitute “leave” to depart the court, and, if acted upon in good faith, would be sufficient to justify such principal in departing from the court, and not returning thereto, until in some manner thereafter lawfully required to return. We are persuaded that if the surety, upon the faith of such statement, did, as alleged, release the said principal and surrender to him the security which he theretofore held, the state, in *536 equity and good conscience, ought to he estopped from insisting upon a forfeiture of said recognizance or taking a judgment thereupon as against the surety. Our conclusion is supported by the following authorities: People v. Bartlett, 3 Hill (N. Y.), 570; Louisiana v. Moody, 111 La., 199, 35 So., 516; People v. Hammond, 54 Hun, 635, 7 N. Y. Suppl., 219; Niblo v. Ciark, 3 Wend. (N. Y.), 24; Woodall v. Smith, 51 Ga., 171; State v. Moody, 74 N. C.,73. To permit judgment to go against the defendant, in the face of these admissions, ought to be regarded as repugnant to the rules of law as it is inconsistent with common honesty.
It is urged that even though the district attorney granted leave to the defendant to depart from the court, yet, under the further condition in the bond or recognizance, that the accused should “abide the order of the court,” the knowledge and acquiescence of the court as well as the knowledge and acquiescence of the district attorney was required. This contention is not tenable, if it is based upon the assumption that those words add anything to the terms of the bond. It is sometimes held that a recognizance which imposes conditions not specified in the statute requiring it, is void, but it seems to be universally held that such conditions are not binding on the surety. — 34 Cyc., 543, and cases cited. Under section 1947, Rev. Stats. 1908, which provides for the statutory bail or recognizance, the sole conditions are as follows:
“* •* * for the appearance of the indicted person or persons, on the first day of the next district court to be holden in and for such county, to answer said indictment, and not depart the court without leave.”
The further condition imposed, to-wit, that the person indicted shall abide the order of the court, cannot be enforced as against the surety, so far as these words may be considered as adding anything to the statutory conditions of the bond.
*537 It is also urged tliat the decision in the case of Morse v. Budlong, 5 Colo. App., 147, 38 Pac., 59, is decisive against the appellant in the case at bar. In that case it was held that the granting of a new trial upon the ground that the cause was tried ex parte in violation of an oral agreement between counsel was a matter resting in the discretion of the trial court, and that,
“Under a rule of the district court of Arapahoe County, which provides that ‘no verbal agreement of counsel with each other, with a party or with an officer of court, concerning the progress or management of any matter pending in court, will be enforced unless made in open court,’ stipulations and agreements require three parties — the court being the third.” — Rule 23, Dist. Ct., 2nd Jud. Dist. (Italics are ours.)
But it will be noted that the existence of said verbal agreement as alleged was denied by counter-affidavit, in addition to which a rule of the district court made to appear in the record was also considered; while in the case at bar the statement of the district attorney, that the cause would not be prosecuted, is admitted, and no rule of the court,. if any existed, is preserved by the record. Moreover, under the Owers case the court is not a necessary third party to a nolle pros, or an abandonment.
In 36 Cyc., at 1281, it is said:
“It is often required by statute or rule of court that stipulations between parties or their attorneys shall be in writing, and where this is required no oral stipulation. made out of court, will be deemed of any validity, except in so far as it is not disputed. ’ ’
The exception in that quotation is the rule in the present case. The allegation of the understanding between the attorney for the accused and the authorized representative of the state, is not disputed, and ought to be regarded as of equal force to a written stipulation.
*538 Tlie ease of Haney v. People, 12 Colo., 345, 347, 29 Pac., 39, 40, is relied upon as opposed to tlie conclusion we have reached, because it was said in that case by Mr. Chief Justice Helm:
“Such records are public records in the nature of judgments, and import substantially the same verity as other judgments. Their impeachment is hardly less difficult than the impeachment of domestic judgments so situated that scire facias would, at common law, properly issue preliminary to the taking of execution.”
The decision in that cas^ has slight, if any, bearing in this case. The recognizance'there under consideration was one taken before a justice of the peace, forfeited in that court and thereafter certified to the district court, whereupon it became a record not only of the bond, but of the forfeiture in the justice court, giving it the nature of .a judgment to the extent of the forfeiture, and the language quoted had reference to such a record and judgment and the impeachment thereof for reasons affecting only the validity of the recognizance. The entire defense, so far as shown by the opinion, pertained to matters affecting the validity of the recognizance itself, and not to anything occurring after the execution of the bond by reason of which it is claimed that the forfeiture should be set aside or judgment should not be entered.
Recognizance is defined by Mr. Justice Elbert in Connor v. People, 4 Colo., 134, 135, as “an obligation of record entered into before a court of record or officers duly authorized for that purpose, with a condition to do some act;” and in Parks v. United States, 6 New Mex., 72, 27 Pac., 311, it is said, “A recognizance is a contract of record.” The forfeiture is a judgment, to the extent of the adjudication that a breach in some condition of the bond has occurred, but no further. Upon this adjudication of default or forfeiture, suit may be brought as for debt, but a judgment in any sum before service of sum *539 mons in debt or a writ of scire facias would be void.— Johnson v. State, 3 Ark., 524; Pinckard v. People, 1 Scam., 187; People v. Witt, 19 Ill., 169. It is a misnomer to designate a recognizance as a judgment, and inaccurate to treat it as suck, in any of its aspects before forfeiture.
No claim is made that a legal or technical release of the recognizance has been made or was effected by the action of the district attorney. The contention is that the cause had been abandoned by the state, and that fact communicated to the defendant in the criminal proceeding, and to his attorney and surety; and therefore the discharge of said principal recognizor should have been duly entered by the court, and his sureties discharged from liability, and that such discharge should now be made. The sole purpose and function of the obligation was to produce the defendant in court, “then and there to answer unto a certain information herein pending against the said Henry B. McDowell.” If the cause was in fact abandoned by the state, by reason of which the presence of the accused in court was no longer required or desired for trial or matters incident thereto, the purpose of the bond had been served, its function fulfilled and performed, and it should thenceforth be regarded as functus officio, and the formal discharge of the defendant and of his sureties therefrom should have been entered upon application. Any other view, it seems to us, is inconsistent with the office of the bond, and a refusal to discharge and release it after the prosecution had been abandoned would be grossly unjust and oppressive.
We are not unmindful of such decisions as United States v. Van Fossen, 28 Fed. Cas., 367 (1 Dill., 406), which hold that even the death of the principal recognizor will not relieve his sureties from their obligation to produce him in court; but, conceding'that such cases or the preponderance of decided cases are against our *540 conclusion, we prefer to add one more to the respectable number that supports our conclusion, and better satisfies our conception of justice and equity. No consideration of public policy is presented in this case which is sufficient, in our opinion, to justify the judgment upon the bonds without requiring a reply fully and fairly putting in issue the allegations of the answer or avoiding their effect.
The conclusion at which we have arrived is limited in its application to the law as it existed when this case was instituted, as construed in People v. Owers, supra. Whether the defense interposed by the defendant in the instant case would be sufficient upon demurrer under chapter 73, Session Laws of 1913, we do not decide. ’
The judgment is reversed and cause remanded, with instructions to overrule the demurrer.
Cunningham, P. J., Bei/l, J.,' and Hurlbut, J., concur. Morgan, J., dissents.