## The People of the State of Illinois v. Benjamin Flynn, James Bloomer and Thomas Luby.

1. RECOGNIZANCES—*Forfeitures, When Set Aside.*—Under Sec. 310, Ch. 38, R. S., providing that before judgment the court may, in its discretion, set aside a forfeiture of a recognizance by the accused being brought or coming into open court, and showing by affidavit that he was unable to appear according to the terms of the recognizance, by reason of sickness or other cause which shall satisfy the court that he has not been guilty of any *laches* or negligence, there must not only be no intent on the part of the accused to evade the law, but he must not, either by himself or his agents or attorneys, be guilty of any *laches* or negligence as provided by statute.

Memorandum.—*Scire facias* on forfeited recognizance. Error to the Circuit Court of Mercer County; the Hon. ARTHUR A. SMITH, Judge, presiding. Heard in this court at the December term, 1893. Reversed and remanded. Opinion filed May 22, 1894.

The opinion states the case.

JAMES M. BROCK, state's attorney, for plaintiff in error.

PEPPER & SCOTT, attorneys for defendants in error.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

This was a motion in the court below to set aside a forfeiture of a recognizance which had been taken in a criminal cause against Benj. Flynn, one of the defendants in error. The motion was made at a term of court subsequent to the one

at which the forfeiture was taken, and the motive was based on certain affidavits filed on behalf of Benj. Flynn. The main grounds of the motions were set up in the affidavits of defendant in error Benj. Flynn and his father, John Flynn.

Section 310, Chap. 38, Hurd's R. S., under which this motion was made, reads as follows :

Before judgment the court may, in its discretion, set aside such forfeiture by the accused being brought or coming into open court, and showing to the court by affidavit that he was "unable to appear in court according to the terms of the recognizance, by reason of sickness, or some other cause which shall satisfy the court that the accused had not been guilty of any *laches* or negligence.

The court below, on the hearing of the motions, set aside the forfeiture. To reverse such order of the Circuit Court this writ of error is sued out by the plaintiff in error.

The affidavit of defendant in error Benj. Flynn shows that he was young and inexperienced in criminal matters and was indicted on a charge of burglary and larceny March 24, 1892, and that he entered into recognizance for his appearance; that his father acted for him and secured the necessary securities for the recognizance above mentioned, and shortly prior to the August term, 1892, defendant in error Flynn was informed by his father that his case would be continued until the November term, 1892, and relying on such information he did not appear at the August term to attend court and no forfeiture was taken. It was agreed between him and his counsel, Wilson & Church, if his case was to be tried at the next term, they should notify him. Soon after, his case being fully ready for trial, he was notified by his counsel and he came into court; that the case was continued to the next term of court, and appellant returned home to Keithsburg and no forfeiture was made; that in March, 1893, he was working in Muscatine, Iowa; that in response to a letter received from his father, which was lost, he started home, and returned to Keithsburg, March 17, 1893, and went to his father's house and stayed there without concealment until his arrest in June, 1893; that after

reaching home his father said an agreement had been made with affiant's counsel that he need not come to Aledo unless notified by counsel, and as nothing further was heard from this source, defendant in error, affiant, supposed his case continued and did not enter his appearance at the March term, and that while court was in session he remained openly at home in Keithsburg; and that after his return from Iowa until after the said term of court he neither saw nor heard from his counsel, and did not know his recognizance was forfeited till after *scire facias* was served on him about a month previous to his arrest; that his failure to attend court was not the result of any intention to evade the law, and that he intended to attend if necessary.

This affidavit was supported by his father, John Flynn, in which he corroborated that of his son in regard to his action in looking after the case and employing counsel for him; in addition, states he wrote to defendant in error's attorneys, Wilson & Church, about March 11, 1893, asking them to notify him if state's attorney would not agree to a continuance of the case; that his letter was properly directed and mailed, and that no answer was received; that he believed the case was continued and did not cause his son to go to Aledo during the March term of court, 1893, nor did he receive any word from his counsel till after the said March term, and that he firmly believed his son's presence was not necessary, and told his son his case was undoubtedly continued, and that his son remained openly at Keithsburg till his arrest; there was no intention to evade the law, and his son believed the case was continued; that Wilson & Church stated to him they never received the letter from him to them, March 10 or 11, 1893.

There were other affidavits showing that defendant in error came home as he stated.

The plaintiffs in error then offered to show by counter affidavits of Wm. Church, facts that would contradict the affidavit of John Flynn in regard to his sending him and

Wilson a letter asking them to get a continuance, and also tending strongly to impeach his veracity and his good faith in not allowing his son to obey the recognizance. The court below excluded such offer and as we think, correctly. See Wray v. People, 70 Ill. 664.

The question arises on the affidavits read in support of the defendants in error's motion whether the court below failed to exercise a reasonable discretion in setting aside the forfeiture. We think it did. To further the evidence of justice and prevent the miscarriage of criminal prosecutions, the statute must have a reasonably strict construction. There must not only be no intent on the part of the person charged with crime to evade the law in not responding to the recognizance, but the person so charged must not, either by himself or his agents and attorneys, be guilty of "any *laches* or negligence" as provided by statute.

Was there any *laches* or negligence on the part of defendant in error or his father in the former's failure to respond to the requirements of the recognizance? The mere fact that defendant in error's attorneys failed to respond to his father's request to obtain a continuance of the case was taken as sufficient proof that a continuance had been granted. There was no information contained in the letter addressed to Wilson & Church that in case they were not heard from, Flynn, defendant in error, and his father, would accept such fact as proof that a continuance had been granted.

The attorneys were not put on their guard, even that a failure to answer would be taken as evidence of continuance, and defendant in error and his father had no reasonable grounds to think so. They should have believed, rather, from the fact John Flynn received no answer, that either the letter had been miscarried or that the attorneys were neglecting their duties.

If such flimsy excuses as these were sufficient legal grounds for setting aside a forfeiture of a recognizance, courts would be powerless to enforce the criminal law in many instances, and the guilty would be enabled to wear out the prosecution, escape punishment and even the payment

of forfeiture recognizance. As illustrating the strictness of the courts in requiring persons under recognizance to appear as required by such obligation we cite Haugsleben v. People, 89 Ill. 164.

For the error of the Circuit Court in sustaining the motion to set aside the forfeiture of defendant in error's recognizance, the order of the court is reversed and the cause remanded.